NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| OMAR F. RANGINWALA,<br>        Plaintiff,<br>   v.<br>CITIBANK, N.A.,<br>        Defendant. | Civil Action No.: 18-cv-14896<br><br>**OPINION** |

**CECCHI, District Judge.**

This matter comes before the Court on the motion of Defendant CITIBANK, N.A. ("Defendant") to compel arbitration and stay the proceedings. ECF No. 20. Plaintiff Omar F. Ranginwala ("Plaintiff") filed an opposition (ECF No. 23) and Defendant replied (ECF No. 24). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendant's motion to compel arbitration is **GRANTED**.

**I.     BACKGROUND**

This dispute arises out of Defendant closing Plaintiff's credit card account. ECF No. 19 ¶¶ 16–17. Plaintiff had a Citibank credit card account since October 19, 2001. Id. ¶ 11. When Plaintiff's credit card was declined in early 2017, he contacted Defendant via a chat on Defendant's website. Id. ¶¶ 12, 13. Plaintiff was told by a representative that "he/she had no information on [Plaintiff's] account other than that it was deemed a 'security risk.'" Id. ¶¶ 13–14. Plaintiff then contacted Defendant via telephone and was informed that Plaintiff's "account was closed" and "that Defendant had the right to close his account, and that Defendant did not have to provide a reason for doing so." Id. ¶¶ 15–16. Thereafter, Plaintiff received a letter dated February 3, 2017 from Defendant. Id. ¶ 17. The letter informed Plaintiff that Defendant closed the credit card account and stated, "Pursuant to the Citibank N.A., Credit Card Agreement, we have the right to

close your account at any time at our discretion." Id. ¶¶ 17–18. The Credit Card Agreement ("the Agreement") states that Defendant "may close or suspend your account . . . for any reason or for no reason." Id. ¶ 20 (citing Exhibit A). The Agreement also states that Defendant may close a credit card holder's account "without notifying you, as allowed by law." Id.

As relevant here, the Agreement (ECF No. 20-4) includes an arbitration provision (the "Arbitration Agreement"), which provides:[1]

> **Arbitration**
>
> *Please read this provision of the Agreement carefully.*
>
> This section provides that disputes may be resolved by binding arbitration. Arbitration replaces the right to go to court, have a jury trial or initiate or participate in a class action. In arbitration, disputes are resolved by an arbitrator, not a judge or jury. Arbitration procedures are simpler and more limited than in court. This arbitration provision is governed by the Federal Arbitration Act (FAA), and shall be interpreted in the broadest way the law will allow.
>
> **Covered claims**
> - You or we may arbitrate any claim, dispute or controversy between you and us arising out of or related to your Account, a previous related account or our relationship (called "Claims").
> - If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.
>
> Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party

---

[1] On a motion to compel arbitration, the Court may consider "the face of a complaint, and documents relied upon in the complaint." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (citation omitted). Here, while the amended complaint does not attach the Agreement, it does reference the Agreement insofar as Plaintiff alleges, *inter alia*, the following: that Defendant improperly terminated his credit card account pursuant to the Agreement (ECF No. 19 at ¶¶ 18–21, 24); that Plaintiff qualifies as an "applicant" under the Equal Credit Opportunity Act as he is contractually liable for the credit provided to him by Defendant and for any balance on his account (id. ¶¶ 40–41); and that Defendant violated Plaintiff's equal rights, specifically his right to make and enforce contracts under 42 U.S.C. § 1981(b) (id. ¶¶ 49, 51, 56). The Court further notes that although the amended complaint does not physically attach the Agreement, it explicitly states that "[t]he Credit Card Agreement . . . attached with Defendant's Thank You Premier credit card is accessible through Defendant's website." Id. ¶ 19.

> claims, interpleaders or otherwise; Claims made regarding past, present, or future conduct; and Claims made independently or with other claims. This also includes Claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, Authorized User, employee, agent, representative or an affiliated/parent/subsidiary company.

ECF No. 20-4 at 3, 14.

On October 11, 2018, Plaintiff filed a complaint alleging that Defendant discriminated against him in closing his credit card account. ECF No. 1.  Plaintiff then filed an amended complaint on February 3, 2020, which brings three causes of action against Defendant for violations of:  (1) the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691; (2) 42 U.S.C. § 1981 (equal rights); and (3) the New Jersey Law Against Discrimination, N.J. Stat Ann. § 10:5–12. ECF No. 19 ¶¶ 47–63.

On February 18, 2020 Defendant filed the instant motion seeking to compel Plaintiff to arbitration. ECF No. 20.  Defendant argues that Plaintiff's claims, from both the original complaint and the amended complaint, are subject to a valid and enforceable arbitration agreement. ECF No. 20-2 at 2.  Plaintiff filed an opposition, objecting to arbitration and arguing that:  (1) the Federal Arbitration Act does not apply; (2) the arbitration agreement is unenforceable; (3) the arbitration agreement is substantively unconscionable; (4) arbitration would limit recovery; and (5) the dispute falls outside the scope of the arbitration agreement. ECF No. 23 at 1–2.  Defendant filed a reply, which argues that Plaintiff's arguments fail as a matter of law. ECF No. 24 at 1–2.

## II.    LEGAL STANDARD

The Federal Arbitration Act ("FAA") reflects the strong federal policy in favor of arbitration and "places arbitration agreements on equal footing with all other contracts.'" *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599 (3d Cir. 2020) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)).  Under the FAA, courts "compel arbitration of claims

covered by a written, enforceable arbitration agreement." *Bacon*, 959 F.3d at 599 (citing FAA, 9 U.S.C. §§ 3, 4). Yet despite the strong presumption of arbitrability, "[a]rbitration is strictly a matter of contract" and is thus governed by state law. *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 441, 444 (3d Cir. 1999) ("If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so."). Accordingly, when deciding whether to compel arbitration under the FAA, the Court must determine "(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (citation omitted). In conducting this inquiry, the Court applies state law principles of contract formation. *Torres v. Rushmore Serv. Ctr., LLC*, No. 18-9236, 2018 WL 5669175, at *2 (D.N.J. Oct. 31, 2018).

**III.   DISCUSSION**

In determining whether a valid arbitration agreement exists between the parties, the Court must first decide whether to apply the Rule 12(b)(6) or Rule 56 standard of review. *Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015). The Court will review a motion to compel arbitration under the Rule 12(b)(6) standard "when it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause.'" *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (citation omitted). Conversely, the Rule 56 standard will apply when "'the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity' to establish on its face that the parties agreed to arbitrate." *Id.* at 774. Where a complaint does not plead or attach the relevant terms of an arbitration provision, courts apply a summary judgment standard, and should compel arbitration where there is no material issue of fact

4

that "a valid agreement to arbitrate exists" and "the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).

Here, the Court will consider Defendant's motion to compel arbitration under the summary judgment standard. *See* Fed. R. Civ. P. 56(c). Defendant contends that this standard applies as the amended complaint does not attach the Agreement as an exhibit. ECF No. 20-2 at 7. Accordingly, as the amended complaint does not make clear that the parties entered into an agreement to arbitrate, summary judgment is the appropriate standard of review. *See Ahmetasevic v. Citibank, N.A.*, No. 19-5707, 2020 WL 5146124, at *3 (E.D. Pa. Aug. 31, 2020); *Bey v. Citi Health Card*, No. 15-6533, 2017 WL 2880581, at *3 (E.D. Pa. July 6, 2017) (citations omitted) ("A court will compel arbitration only when there is 'no genuine issue of fact concerning the formation of the agreement' to arbitrate. The court must consider all evidence provided by the party opposing arbitration and draw all reasonable inferences in that party's favor."). In his opposition, Plaintiff does not appear to contest that he entered into the Agreement and its attendant Arbitration Agreement. *See* ECF No. 23 at 1–3, 5 ("Under the terms of the credit card agreement between Defendant and Mr. Ranginwala, all claims arising out of their relationship are subject to arbitration. However, by taking the adverse action of terminating his credit card account, any contractual relationship between the parties, including any agreement to arbitrate, ceased to exist."); *see also* ECF No. 19 ¶¶ 19, 49, 51, 56 (the amended complaint also refers to the contractual relationship between the parties based on the Agreement). Plaintiff argues instead that the Court should not compel arbitration because: (1) the FAA does not apply as the contractual relationship between the parties ended when Defendant closed Plaintiff's credit card account; (2) the Arbitration Agreement is contrary to congressional intent and therefore unenforceable; (3) the class action waiver renders the Arbitration Agreement unconscionable; (4) compelling arbitration would limit

5

discovery and deprive Plaintiff of remedies; and (5) even if the Arbitration Agreement is enforceable, Plaintiff's claims fall outside its scope. ECF No. 23 at 5–15. Accordingly, there is no material dispute of fact to indicate that Plaintiff did not sign the Agreement or that his claims fall within the scope of its arbitration provision.

For the reasons set forth below, the Court finds that a valid and enforceable agreement to arbitrate exists between the parties under applicable principles of contract law and that because Plaintiff's claims fall within the scope of the Arbitration Agreement, the parties are compelled to arbitrate this dispute. The Court will address each of Plaintiff's arguments in turn.

### A. The FAA Applies

Plaintiff argues the FAA does not apply because by terminating Plaintiff's credit card account Defendant ended any contractual relationship between the parties, including any agreement to arbitrate. ECF No. 23 at 5. Defendant responds that the terms of the Agreement specifically state that such terms "shall survive . . . termination of the account." ECF No. 24 at 2.

Section 2 of the FAA provides that binding arbitration provisions in contracts "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see Buckeye*, 546 U.S. at 442–43. The FAA defines "commerce" as "commerce among the several states." 9 U.S.C. § 1. Here, the transactions at issue satisfy the "involving commerce" requirement as the parties are citizens of different states. ECF No. 20-2 at 9 (noting that Plaintiff is a resident of New Jersey and that Defendant is located in South Dakota). The Agreement expressly states that the arbitration provision "is governed by the Federal Arbitration Act." *See* ECF No. 20-4 at 3.

"Arbitration provisions, which themselves have not been repudiated, are meant to survive breaches of contract." *Drake Bakeries, Inc. v. Local 50, Am. Bakery & Confectionery Workers*

*Int'l*, 370 U.S. 254, 262 (1962).  Here, the fact that Defendant closed Plaintiff's credit card account did not end the contractual relationship between the parties and did not terminate the agreement to arbitrate contained therein, especially given that the Agreement expressly states that it "shall survive changes in this Agreement and termination of the account or relationship between you and us." ECF No. 20-4; *see also Meierhenry Sargent LLP v. Williams*, No. 16-4180, 2017 WL 1653312, at *6 (D.S.D. May 1, 2017).

Moreover, formation of the Agreement itself is governed by state law principles. *See Bacon*, 959 F.3d at 599–600 ("One component of a valid arbitration agreement is that the parties agreed to arbitrate.  To determine this, we apply state-law principles of contract formation."). Here, formation of the contract in this case is governed by South Dakota law as the Agreement contains a choice of law provision. ECF No. 20-4.  More specifically, Plaintiff having taken no action to reject the arbitration provision and proceeding to use the account is sufficient to establish Plaintiff's assent to the Agreement, including the arbitration provision. S.D. Codified Laws § 54-11-9 ("The use of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance without written notice from a card holder to cancel the account creates a binding contract between the card holder and the card issuer with reference to any accepted credit card, and any charges made with the authorization of the primary card holder."); *see also Ahmetasevic*, 2020 WL 5146124, at *5 ("Under South Dakota law, continued use of a credit card constitutes acceptance of the card agreement, especially where there is adequate opportunity to reject the terms."); *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1198–99 (S.D. Cal. 2013) (applying South Dakota law); *Ventura v. 1st Financial Bank USA*, 2005 WL 2406029, at *4–5 (N.D. Cal. Sept. 29, 2005) (same); *Fedotov v. Peter T. Roach & Assocs., P.C.*, 2006 WL 692002, at *2 (S.D.N.Y. Mar. 16, 2006) (same).

Therefore, the issues here involve commerce within the meaning of the FAA. Defendant's closing of Plaintiff's account did not terminate the Agreement, and under South Dakota law the facts are sufficient to show Plaintiff accepted the terms of the contract, including the arbitration provision. Accordingly, the FAA applies to this action.

**B. The Arbitration Agreement is Valid and Enforceable**

The FAA instructs courts to view arbitration agreements as "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has explained that the FAA creates a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The FAA "standing alone, therefore mandates enforcement of agreements to arbitrate statutory claims. Like any statutory directive, the [FAA]'s mandate may be overridden by a contrary congressional command." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). The party opposing arbitration must "show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.* at 227 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). Recently, the Supreme Court clarified that the intention to displace the FAA must be "clear and manifest." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018). As such, when there is a conflict between two federal statutes, "we come armed with the 'stron[g] presum[ption]' that repeals by implication are 'disfavored' and that 'Congress will specifically address' preexisting law when it wishes to suspend its normal operations in a later statute." *Id.* (citation omitted).

Plaintiff argues that "analysis of the text and legislative history of the ECOA reveals that compelling arbitration for the current matter would fail to promote the intent of Congress in enacting the statute." ECF No. 23 at 8. Plaintiff asserts that there is an inherent conflict between

8

the ECOA's "inten[t] to prevent the kinds of credit discrimination which have occurred in the past, and to anticipate and prevent discriminatory practices in the future" and arbitrating in a private forum whereby "other consumers will not be given the opportunity to become aware of the discriminatory practices of Defendant and will be far more likely to experience credit discrimination in the future." Id. at 9.

Nevertheless, the Supreme Court has made clear that "[a] party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing 'a clearly expressed congressional intention' that such a result should follow." *Epic Sys.*, 138 S. Ct. at 1624 (citations omitted) ("And in approaching a claimed conflict, we come armed with the 'stron[g] presum[ption]' that repeals by implication are 'disfavored' and that 'Congress will specifically address' preexisting law when it wishes to suspend its normal operations in a later statute."). The Supreme Court further noted that they have "stressed that the absence of any specific statutory discussion of arbitration . . . is an important and telling clue that Congress has not displaced the [FAA]." *Id.* at 1627 (listing examples of statutes that explicitly override the FAA).

Here, there is no discussion of arbitration in the ECOA and no clearly expressed congressional intention to displace the FAA. Accordingly, the Arbitration Agreement is enforceable.

### C. The Arbitration Agreement is Not Substantively Unconscionable

Plaintiff next argues that the bar on class actions contained in the Arbitration Agreement, renders the clause substantively unconscionable. ECF No. 23 at 9–10. Plaintiff asserts further that the lack of ability to negotiate and the disparity in bargaining power makes the arbitration clause

9

unconscionable. Id. at 10.  Specifically, Plaintiff takes issue with "the burden of each party to bear their own financial burden of attorneys' fees, expenses, and costs." Id. at 11.

Plaintiff's argument regarding the class action waiver is unavailing.  First, the amended complaint was not filed as a class action nor has Plaintiff indicated that he wishes to pursue his claims on a class-wide basis. *See* ECF Nos. 19, 23.  Second, the Supreme Court has explicitly held that the FAA preempts any state law which classifies class action waivers as unconscionable. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 347–51 (2011); *see also Gates v. Northland Grp., Inc.*, No. 16-1492, 2017 WL 680258, at *2 (D.N.J. Feb. 21, 2017) ("[A]rbitration agreements that contain waivers of class actions are valid.").  The inability to proceed as a class action does not make an arbitration agreement unconscionable. *See Clemons v. Midland Credit Mgmt., Inc.*, No. 18-16883, 2019 WL 3336421, at *5 (D.N.J. July 25, 2019); *Brown v. Sklar-Markind*, No. 14-0266, 2014 WL 5803135, at *10 (W.D. Pa. Nov. 7, 2014); *Toma v. Bankers Life & Cas. Co.*, No. 18-2046, 2019 WL 4229754, at *9 (S.D. Cal. Feb. 25, 2019).

Accordingly, while state contract principles determine whether an arbitration agreement is unconscionable, *Concepcion*, 563 U.S. at 340, the FAA preempts conflicting state rules that prohibit arbitration or that "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 341, 352.  Thus, in determining unconscionability, the Court applies South Dakota contract law. *See Bey*, 2017 WL 2880581, at *4.  South Dakota law requires the presence of both substantive and procedural unconscionability to void a contract. *Nygaard v. Sioux Valley Hosps. & Health Sys.*, 731 N.W.2d 184, 194–95 (S.D. 2007).  As explained above, the Supreme Court has held that arbitration agreements containing class action waivers are valid. *See Concepcion*, 563 U.S. at 347–51; *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 236–37 (upholding the enforceability of contractual class action waivers under the

FAA); *see also DeLoe v. Dep't Stores Nat'l Bank*, No. 17-22, 2018 WL 4655765, at *6 (D. Or. Mar. 23, 2018) (rejecting argument that defendant Citibank's arbitration clause was invalid because it contained a class action waiver, and noting that other courts had held that similar arbitration clauses containing class action waivers are not unconscionable under South Dakota law); *George v. Midland Funding, LLC*, No. 18-15830, 2019 WL 2591163, at *4 (D.N.J. June 25, 2019) (compelling arbitration pursuant to Citibank's arbitration agreement, which included a class action waiver).

In addition, several other courts have upheld and enforced arbitration provisions containing similar or identical language to the Arbitration Agreement currently before the Court. *See, e.g.*, *George*, 2019 WL 2591163, at *4 (compelling arbitration pursuant to Citibank's arbitration agreement, which included a class action waiver); *Samenow v. Citicorp Credit Servs., Inc.*, 253 F. Supp. 3d 197, 209–10 (D.D.C. 2017) (applying South Dakota law and compelling arbitration under defendant Citibank's arbitration agreement); *Bey*, 2017 WL 2880581, at *5 (same); *Ahmetasevic*, 2020 WL 5146124, at *5 (same); *Cunningham v. Citigroup, Inc.*, No. 05-3476, 2005 WL 3454312, at *2 (D.N.J. Dec. 16, 2005) ("Since the Agreement is a standard form that is widely used by Citi Defendants in their business dealings, this is not the first time the terms of the Agreement have been the subject of litigation. Arbitration agreements by Citi Defendants similar to the one at issue here have been upheld and enforced by numerous other courts.").

Plaintiff also takes issue with how the fees are allocated in the Agreement. However, the arbitration provision provides: "arbitration fees will be allocated according to the applicable [American Arbitration Association ("AAA")] rules." ECF No. 20-4. The agreement is not unconscionable where it does not limit a party's right to recover attorney's fees under a statutory claim, like ECOA, which authorizes such recovery. *See Coiro v. Wachovia Bank, N.A.*, No. 11-

11

3587, 2012 WL 628514, at *6–7 (D.N.J. Feb. 27, 2012). Plaintiff has not demonstrated that the arbitration provision is unconscionable under South Dakota law. Accordingly, the arbitration agreement is enforceable.

### D. Arbitration Would Not Limit Recovery

Plaintiff also argues that the arbitration provision would deprive him of certain remedies, namely that the class action waiver "deprives [him] of an opportunity to be fully compensated for the harm he experienced." ECF No. 23 at 13. Further, Plaintiff argues that arbitrating this matter "would deeply impede the opportunity to conduct discovery which would reveal the potentially vast scope of Defendant's wrongdoing." Id.

As discussed above, the Supreme Court has already considered this argument about class action waivers and found it unpersuasive. *See Concepcion*, 563 U.S. at 347–51. In addition, Plaintiff has not shown that discovery through arbitration would be insufficient as the Agreement here in no way restricts discovery, and states only that "Arbitration shall be conducted by the [AAA] according to this arbitration provision and the applicable AAA arbitration rules." ECF No. 20-4. AAA rules permit a range of discovery, including the exchange of documents and information, identification of witnesses and exhibits, and grants the arbitrator the authority to order additional discovery "needed to provide a fundamentally fair process." AAA R. 22(a)-(c); *see Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991).

The Supreme Court has also made clear that in "agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors*, 473 U.S. at 628. Likewise, here, Plaintiff is not deprived any remedies by proceeding through arbitration.

12

### E. The Dispute Falls Inside the Scope of the Arbitration Agreement

Finally, Plaintiff argues that, even if the Arbitration Agreement is enforceable, "it would be fundamentally unjust" to arbitrate his claim because "[t]he ECOA was enacted in order to prevent credit discrimination." ECF No. 23 at 15. Specifically, Plaintiff argues against arbitration because his claim "involves intentional discriminatory action by [Defendant], which is directly in line with exactly the type of behavior Congress sought to prohibit in enacting the ECOA." Id. However, as discussed above, there is no clear manifest intent by Congress that the ECOA displace the FAA.

Further, the nature of Plaintiff's claims does not mean that they fall outside the arbitration provision. In determining if a claim falls within the scope of an arbitration provision, courts focus on the facts behind a claim, not the legal theories alleged in the complaint. *Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.*, 109 F. Supp. 2d 1236, 1256–57 (S.D. Cal. 2000). Here, Plaintiff's claims relate to the closing of his credit card account, which is governed by the Agreement, and the arbitration provision contained therein. Accordingly, Plaintiff's claims relate to the subject of the arbitration provision in the Agreement and thus fall within the broad scope of the arbitration provision.

Therefore, as Plaintiff's claims fall within the scope of the Arbitration Agreement, and the Court having found that the Agreement between the parties contained a valid and enforceable Arbitration Agreement, Defendant's motion to compel arbitration will be granted.

### IV. <u>CONCLUSION</u>

For the reasons set forth above, this Court finds that the parties entered into an enforceable agreement to arbitrate the instant dispute. Accordingly, Defendant's motion to compel arbitration

is **GRANTED** and these proceedings are **ADMINISTRATIVELY STAYED** pending the completion of arbitration. An appropriate order accompanies this opinion.

DATED: November 19, 2020

                                                    **CLAIRE C. CECCHI, U.S.D.J.**